TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00520-CV






Texas Parks and Wildlife Department, Appellant



v.



Lila Wilson, as Surviving Wife of Wilford Wilson and Janet Denise Wilson Belz, Debra

Kay Wilson, Mary Ann Wilson Yancy and Tamara Lee Wilson, as Surviving


Children of Wilford Wilson, Deceased; and Lydia Mae Wilson, Individually,


and as Independent Executrix of the Estate of Wilton Guendell


Wilson, Deceased, and Angela Gayle Wilson Kramm and


Curtis Dale Wilson, Surviving Children of Wilton 


Guendell Wilson, Deceased, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 95-05907, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING






 This is a wrongful death and survival case brought against appellant Texas Parks
and Wildlife Department (the Department) pursuant to the Texas Torts Claims Act. See Tex. Civ.
Prac. & Rem. Code Ann. §§ 71.001-.011 (wrongful death statute), .021 (survival statute),
101.001-.109 (Texas Tort Claims Act) (West 1997 & Supp. 1998). (1) A jury found the Department
liable for the deaths of two brothers, Wilton and Wilford Guendell Wilson, and the trial court
rendered judgment in favor of appellees, who are survivors and representatives of the Wilson
brothers. We will reverse the trial court's judgment and render in part and remand in part for new
trial.


FACTS AND PROCEDURAL BACKGROUND (2)


 The Department owns and operates Pedernales Falls State Park (the Park). On May
16, 1987, the Wilson brothers, along with Wilford's adult son, Thomas Wayne Wilson (Wayne),
decided to fish in the Pedernales River. They drove to the Park around 3:00 p.m., parked their
vehicle at the end of a paved road close to the river, walked the edge of the river along Park
property, and entered the water by wading and walking across rocks protruding from the river. 
When they reached an area known as "Hugo Hole," approximately two-thirds of the way across
the river, they set a minnow bucket on a rock and began to fish.

 Around 8:15 p.m., Wes Carlson and his son arrived at the Park to join the Wilsons. 
Approximately fifteen minutes after the Carlsons began fishing with the Wilsons, Wayne spotted
the minnow bucket floating away due to a sudden rise in the river level. Realizing that a flash
flood was occurring, the Wilsons and Carlsons immediately headed toward the bank on the Park
side of the river. The Wilson brothers drowned before they could reach the riverbank. Wayne
and the Carlsons survived.

 Appellees instituted a wrongful death and survival action (3) against the Department
based on a premises liability theory. (4) The jury found that the Wilson brothers were on Department
property at the time of accident, that the Wilson brothers were invitees, and that the Department,
as owner and occupier of the premises, failed to use ordinary care to reduce or eliminate an
unreasonable risk of harm created by a premises condition of which the Department was aware
or should have been aware. The jury awarded appellees damages exceeding the statutory limits
under the Texas Tort Claims Act. The trial court rendered judgment for appellees in the
maximum amount allowed under the Texas Tort Claims Act, $250,000 to Wilford's
representatives and survivors and $250,000 to Wilton's representatives and survivors. See Texas
Tort Claims Act § 101.023(a). The Department now appeals the trial court's judgment in nineteen
points of error.


DISCUSSION


Establishing liability under the Texas Tort Claims Act

 Under common law, the State of Texas, its agencies, and other governmental units (5)
are immune from suit. See Lowe v. Texas Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976). This
governmental immunity is waived only if liability can be established under the limited
circumstances specified pursuant to the Texas Tort Claims Act. See Texas Tort Claims Act
§101.025; City of Denton v. Van Page, 701 S.W.2d 831, 834 (Tex. 1986). Section 101.021
provides that a governmental unit may be liable for personal injury or death "caused by a
condition or use of tangible personal or real property if the governmental unit would, were it a
private person, be liable to the claimant according to Texas law." Texas Tort Claims Act §
101.021(2). As with any tort claim against a private person under Texas law, a plaintiff relying
on the Texas Tort Claims Act "must prove the existence and violation of a legal duty owed him
by the defendant." Van Page, 701 S.W.2d at 834 (emphasis added). Thus, the threshold issue
that we must address is what legal duty, if any, the Department owed the Wilson brothers with
respect to the dangerous condition of the Pedernales River. See id.


The Department's legal duty

 Question one of the jury charge inquired, "At the time of the occurrence in
question, on May 16, 1987, were Wilford Wilson and Wilton Guendell Wilson on Texas Parks
and Wildlife property?" The jury answered "yes," concluding that the Department owned the
portion of the river where the incident occurred. The Department's first two points of error
challenge the sufficiency of evidence supporting the jury's finding that the Department owned the 
river. In point of error one, the Department asserts that there is no evidence that it owned the
river. In its second point of error, the Department argues in the alternative that there is
insufficient evidence supporting the jury's finding that it owned the river.

 In reviewing a "no evidence" point attacking the legal sufficiency of the evidence
supporting the jury's finding on an issue on which the appellant did not have the burden of proof,
we consider only the evidence and inferences tending to support the finding and disregard all
evidence and inferences to the contrary. See Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex.
1992); Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 459 (Tex. 1992). We will uphold the
finding if more than a scintilla of evidence supports it. See Formosa Plastics Corp. USA v.
Presidio Eng'r & Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998). When the evidence
furnishes a rational basis for reasonable minds to reach different conclusions as to the existence
of a vital fact, such evidence amounts to more than a scintilla. See Havner, 825 S.W.2d at 459. 

 A factual sufficiency challenge must demonstrate that there is insufficient evidence
to support the jury's finding. See Hickey v. Couchman, 797 S.W.2d 103, 109 (Tex.
App.--Corpus Christi 1990, writ denied). In reviewing a sufficiency of the evidence challenge,
we consider all evidence supporting the jury's finding, setting aside the verdict only if the evidence
by itself is so weak as to be clearly wrong and manifestly unjust. See Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986).

 "In order to predicate a duty on a theory of premises liability, it is necessary to
determine whether the governmental unit is a 'possessor' by virtue of ownership, occupation, or
control of the premises or creation of the defect which allegedly caused the injury." Payne v. City
of Galveston, 772 S.W.2d 473, 477 (Tex. App.--Houston [14th Dist.] 1989, writ denied) (citing
Van Page, 701 S.W.2d at 834-35; Vela v. Cameron County, 703 S.W.2d 721, 723 (Tex.
App.--Corpus Christi 1985, writ ref'd n.r.e.); Marshbank v. Austin Bridge Co., 669 S.W.2d 129,
133 (Tex. App.--Corpus Christi 1984, writ ref'd n.r.e.)). It is undisputed under the evidence in
this case that the Wilson brothers drowned in the Pedernales River adjoining Park property and
that the river itself created the dangerous condition. It is also undisputed that the Department
maintains and controls the Park. We find no evidence in the record, however, that the Wilson
brothers drowned on premises owned by the Department.

 All water flowing from every river in the state is the property of the State of Texas
held in trust for the public. See Tex. Water Code Ann. § 11.021(a) (West 1988); Carrithers v.
Terramar Beach Comm'n, 645 S.W.2d 772, 774 (Tex.), cert. denied, 464 U.S. 981 (1983). The
1970 deed which granted the land for the Park specifically conveyed the land to the State of Texas,
for the use and benefit of the Department, and expressly described the property line as running
along the south side of the river. The deed did not describe or convey any portion of the river. 
Further, a plat showing a 1988 survey of the north portion of the Park's western property line
specifically places the Park's northwestern boundary short of the river's shoreline. (6)

 At trial, appellees presented evidence of a sign posted on Park property stating
"PRIVATE PROPERTY BEGINS AT OPPOSITE WATERS EDGE" to establish the
Department's ownership of the river. The sign merely informs Park patrons that the Department
does not own the land on the other side of the river. Such plain language cannot be interpreted
to mean the Department owns the river, for the legislature has designated that all of the Pedernales
River is held in trust for the public, not just the Department. (7) Thus, the Department's control and
maintenance of the Park and the fact that the Park adjoins the Pedernales River does not create a
"premises" defect because the river is not owned by the Department. See City of San Benito v.
Cantu, 831 S.W.2d 416, 425 (Tex. App.--Corpus Christi 1992, no writ); Vela, 703 S.W.2d at
723. We sustain the Department's first point of error.

 Appellees argue that the legal sufficiency of the evidence supporting the jury finding
on ownership is irrelevant because the evidence supports a finding that the Department
"controlled" the portion of the river adjoining the Park, regardless of whether it owned that
portion of the river. "In order to predicate a duty on a theory of premises liability, it is necessary
to determine whether the governmental unit is a 'possessor' by virtue of ownership, occupation
or control of the premises or creation of the defect which allegedly caused the injury." Payne,
772 S.W.2d at 477 (emphasis added) (citing Van Page, 701 S.W.2d at 834-35; Vela, 703 S.W.2d
at 723; Marshbank, 669 S.W.2d at 133). Texas courts recognize that ownership is not
synonymous with control. See De Leon v. Creely, 972 S.W.2d 808, 812 (Tex. App.--Corpus
Christi 1998, no pet.); IDC, Inc. v. County of Nueces, 814 S.W.2d 91, 94 (Tex. App.--Corpus
Christi 1991, writ denied). Thus, the issue of control is a separate question of fact for the jury
to determine. See Payne, 772 S.W.2d at 485.

 Appellees argue in their reply points that "there is substantial evidence that the
Appellant exercised control over the premises in question, that is, the riverbed." Only the issue
of ownership was before the jury; the question of control was not presented to the jury. Our
review of the record reveals, however, that appellees did object to question one of the jury charge
and did submit a substantially correct question addressing the issue of control, which the trial court
denied. (8) See Spencer v. Eagle Star Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994); Tex. R.
Civ. P. 274. Thus, the jury was never allowed to reach the issue of control. In the interest of
justice, therefore, we conclude that the cause should be remanded for a new trial solely on the
issue of control. See Tex. R. App. P. 43.3(b). (9)

CONCLUSION


 Having concluded that there is no evidence to support the jury's finding that the
Department owned the portion of the Pedernales River adjoining the Park, we reverse the
judgment of the trial court and render that appellees take nothing on that basis. In the interest of
justice, however, we remand the cause to the trial court for new trial on the issue of control.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Jones and Yeakel

Reversed and Rendered in Part; Remanded in Part

Filed: January 28, 1999

Publish

1. The 1987 and 1995 amendments to the Texas Tort Claims Act do not apply in this case. 
Therefore, we will refer to the current statute in this opinion for purposes of convenience.
2. A more detailed summary of the facts can be found in previous opinions in this case. See
Wilson v. Texas Parks and Wildlife Dep't, 853 S.W.2d 825, 827-28 (Tex. App.--Austin 1993),
rev'd, 886 S.W.2d 259 (Tex. 1994). 
3. This case has been pending before several trial and appellate courts for many years. 
Appellees first sued the Department in Travis County, but the Department obtained a change of
venue to Blanco County. The case was tried before a jury and, based on the jury's verdict, the
trial court rendered a take-nothing judgment in favor of the Department. This Court affirmed and
the Texas Supreme Court reversed and remanded on the ground that the change of venue was
improper, and ordered a new trial in Travis County. See Wilson v. Texas Parks and Wildlife
Dep't, 886 S.W.2d at 262.
4. In the proceedings incident to the second trial, appellees sued on several theories in addition
to premises liability. The trial court granted the Department partial summary judgment on
appellees' additional theories. Appellees do not challenge the trial court's partial summary
judgment in this appeal.
5. The Department is a "governmental unit" as defined under the Texas Tort Claims Act. See
Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2)(A) (Texas Tort Claims Act) (West Supp. 1998). 

6. We also note that in the reply brief of appellees Lydia Wilson, et al., they state, "It is 
undisputed that Pedernales riverbed belongs to the State of Texas and not to the Texas Parks and
Wildlife Department."
7. We note that the legislature identifies the Department as a separate governmental unit of the
State of Texas charged with specific duties and functions specified by statute. See Tex. Parks &
Wildlife Code Ann. §§ 11.001-.074 (West 1991 & Supp. 1998). Pursuant to the Texas Tort
Claims Act, a claimant must specifically name the governmental unit against whom liability is to
be established. Texas Tort Claims Act § 101.102(b). The Department was the only defendant in
this case. Accordingly, appellees must establish liability against the Department, not the State. 
Ownership of the river, therefore, cannot be imputed to the Department.
8. Appellees submitted the following question, which was refused by the trial court: "On May
16, 1987, were Wilford Wilson and Wilton Guendell Wilson on property owned or controlled by
the Texas Parks and Wildlife Department?"
9. The Department's appeal was perfected before the 1997 amendments to the Texas Rules of
Appellate Procedure took effect. Under the former rules, when the trial court's judgment was to
be reversed we were instructed to "proceed to render such judgment or decree as the court below
should have rendered, except when it is necessary to remand to the court below for further
proceedings." Tex. R. App. P. 81(c) (amended 1997). The Texas Supreme Court held that one
instance when remand is necessary is when it is "in the interest of justice." Scott v. Liebman, 404
S.W.2d 288, 294 (Tex. 1966). The current version of the Texas Rules of Appellate Procedure has
codified the supreme court's holding, expressly granting this Court the authority to remand when 
"the interests of justice require a remand for another trial." Tex. R. App. P. 43.3(b). Applying
either rule, we may remand this case to the trial court for a new trial.


EM>Tex. R. App. P. 43.3(b). (9)

CONCLUSION


 Having concluded that there is no evidence to support the jury's finding that the
Department owned the portion of the Pedernales River adjoining the Park, we reverse the
judgment of the trial court and render that appellees take nothing on that basis. In the interest of
justice, however, we remand the cause to the trial court for new trial on the issue of control.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Jones and Yeakel

Reversed and Rendered in Part; Remanded in Part

Filed: January 28, 1999